**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF NEW MEXICO**

KINSALE INSURANCE COMPANY, an
Arkansas corporation,

      Plaintiff/Counter Defendant,

v.                                                            No. 2:25-cv-00618-JCH-KRS

PECOS VALLEY PRODUCTION, INC.,
a New Mexico corporation,

      Defendant/Counter Plaintiff.

<u>**MEMORANDUM OPINION AND ORDER**</u>

This matter comes before the Court on the *Motion to Dismiss Pecos Valley Production, Inc,'s Counterclaim* (Dkt. No. 15), filed by Plaintiff/Counter Defendant Kinsale Insurance Company ("Kinsale"). Defendant/Counter-Plaintiff Pecos Valley Production, Inc., ("PVP") opposes the motion. Resp., Dkt. No. 22. The primary issue in this motion to dismiss is a legal one: does New Mexico's affirmative duty on insurers to defend and investigate whether a defense is owed upon receiving actual notice of a potential claim apply to claims-made-and-reported policies? Answering this question in the affirmative, the Court will deny the motion to dismiss PVP's counterclaims.

**I.     FACTUAL BACKGROUND**

    **A.  The Parties**

PVP is a cannabis farm with approximately 20 retail dispensaries in New Mexico that sell recreational and medicinal marijuana products. *See* Compl. ¶ 10, Dkt. No. 1; Answer ¶ 10, Dkt. No. 10; Countercl. ¶¶ 1, 6, Dkt. No. 10. Its principal place of business is in Roswell. Countercl. ¶

1, Dkt. No. 10. PVP is a family-owned business that at one time employed family member Kyle Greathouse. *Id.* ¶ 7. He was and remains a partial owner of the family business. *Id.* ¶ 8.

Kinsale is an insurance company that is doing business in New Mexico through the sale of surplus insurance policies. *See* Compl. ¶ 1, Dkt. No. 1; Answer ¶ 1, Dkt. No. 10; Countercl. ¶ 2, Dkt. No. 10.

### B.  The Policies

Kinsale issued a Management Liability Policy to PVP as named insured for the February 9, 2024, to February 9, 2025, policy period (the "2024-25 Policy"). Compl. ¶ 19, Dkt. No. 1; Answer ¶ 19, Dkt. No. 10. Kinsale later issued PVP another Management Liability Policy for the February 9, 2025, to February 9, 2026, policy period (the "2025-26 Policy"). Compl. ¶ 20, Dkt. No. 1; Answer ¶ 20, Dkt. No. 10. Each of the policies provides coverage on a claims-made-and-reported basis pursuant to the terms, limitations, conditions, and exclusions contained in the Employment Practices Liability Coverage Section form (the "EPL Coverage Form") and the Management Liability Policy – General Terms and Conditions (the "General T&C Form"). Compl. ¶ 23, Dkt. No. 1; Answer ¶ 23, Dkt. No. 10. Two key differences between the policies are (1) the policy period and (2) Kyle Greathouse is identified as an Excluded Person in the 2025-26 Policy, but not the 2024-25 Policy. *See* Compl. ¶ 22, Dkt. No. 1; Answer ¶ 22, Dkt. No. 10; Countercl. ¶ 19, Dkt. No. 10.

The policies contain a box disclaimer in the General T&C Form that says in bold and all caps:

> **THIS IS A CLAIMS MADE AND REPORTED POLICY. THE COVERAGE REQUIRES THAT A CLAIM BE FIRST MADE AGAINST AN INSURED DURING THE POLICY PERIOD AND BE REPORTED IN WRITING TO THE COMPANY WITHIN THE POLICY PERIOD OR AN EXTENDED REPORTING PERIOD, IF APPLICABLE**….

Compl. ¶ 24, Dkt. No. 1; Answer ¶ 24, Dkt. No. 10; 2024-25 Policy, Dkt. No. 1-2 at 12 of 35; 2025-26 Policy, Dkt. No. 1-3 at 12 of 42. The Insuring Agreement of the EPL Coverage Form states: "We will pay 'loss' in excess of the Deductible that the 'insured' is obligated to pay for a 'claim' for a 'wrongful act'." Answer ¶ 25, Dkt. No. 10; 2024-25 Policy, Dkt. No. 1-2 at 7 of 35; 2025-26 Policy, Dkt. No. 1-3 at 7 of 42. The policies further define a "claim" to include a "written demand for monetary or non-monetary relief" and a "charge, complaint, or other notice of commencement of federal, state, or local administrative proceedings." Compl. ¶ 26, Dkt. No. 1; Answer ¶ 26, Dkt. No. 10. As relevant here, the term "wrongful act" is defined by the policies to include, among other things, any actual or alleged wrongful discharge or termination of employment, breach of an implied or written contract, employment termination that violates public policy, and retaliation committed by an insured and directed against the organization's past, present, or future employee. *See* Compl. ¶ 27, Dkt. No. 1; Answer ¶ 27, Dkt. No. 10. The 2024-25 Policy excludes "Severance pay" from "loss" for which it provides coverage. *See* Counterclaim ¶ 15, Dkt. No. 10; 2024-25 Policy, Dkt. No. 1-2 at 9 of 35.

The insuring agreement of the EPL Coverage Form states that the coverage only applies if: "The 'claim' is first made against the 'insured' during this 'policy period' and is reported to us in writing during this 'policy period' or within an Extended Reporting Period, if applicable." Compl. ¶ 28, Dkt. No. 1; Answer ¶ 28, Dkt. No. 10. The 2024-25 Policy contains an endorsement:

### NOTICE – WHERE TO REPORT A CLAIM

It is important that losses, claims, or incidents (if incident reporting is permitted under the Policy) are reported in writing and directly to the Claims Department at Kinsale Insurance Company. Reporting losses, claims, or incidents to an insurance agent or broker is not notice to Kinsale Insurance Company Claims Department. Failure to report directly to Kinsale Insurance Company's Claims Department may jeopardize coverage under the Policy.

Compl. ¶ 29, Dkt. No. 1; Answer ¶ 29, Dkt. No. 10.

3

The policies also contain an Exclusion of Designated Person or Entity endorsement, barring coverage for any "claim" or "loss" based upon, arising out of, or in any way involving persons or entities named in the endorsement's Schedule. Compl. ¶ 30, Dkt. No. 1; Answer ¶ 30, Dkt. No. 10. Kyle Greathouse is identified as an "Excluded Person" under the 2025-26 Policy. Compl. ¶ 31, Dkt. No. 1; Answer ¶ 31, Dkt. No. 10.

### C.  The Claim

On or around November 21, 2024, PVP terminated Kyle Greathouse's employment. *See* Compl. ¶ 12, Dkt. No. 1; Answer ¶ 12, Dkt. No. 10. Mr. Greathouse asserts he was terminated in retaliation for reporting to PVP that he did not want to hire back a former employee who had been found to be falsifying I-9 immigration forms and hiring undocumented workers. Compl. ¶ 13, Dkt. No. 1; Answer ¶ 13, Dkt. No. 10. In December 2024, Mr. Greathouse, through his former attorney, entered negotiations for a severance package due to his separation as an employee with the family business. Countercl. ¶ 9, Dkt. No. 10. His attorney sent correspondence regarding a severance package to PVP, expressing an interest in a higher severance package and explaining that litigation might be considered if no agreeable severance package was negotiated. Answer ¶¶ 14-15, Dkt. No. 10. The attorney continued to negotiate an agreeable severance package without litigation in January 2025. *Id.* ¶ 16. However, in January 2025, the severance package negotiations broke down with no agreement among the parties. Countercl. ¶ 10, Dkt. No. 10.

Prior to the expiration of the 2024-25 Policy, PVP began the renewal process for the Kinsale Management Liability Policy with EPL coverage. *Id.* ¶ 16. In January 2025, during this process, PVP first reported the potential claim related to Kyle Greathouse to Kinsale. *Id.* ¶ 17. Kinsale issued a policy renewal, but the 2025-26 Policy excluded claims related to Kyle

Greathouse pursuant to the notice of the potential claim PVP submitted during the renewal process. *Id.* ¶¶ 18-19.

Kinsale did not investigate the potential claim at any time prior to issuing the new policy documents. *Id.* ¶ 20. It failed to investigate to determine whether a defense was owed to its insured under the 2024-25 Policy. *Id.*

In March 2025, Mr. Greathouse's new attorney made a demand to PVP to resolve a potential claim for retaliatory discharge. *Id.* ¶ 11. On March 18, 2025, PVP formally notified the Kinsale Claims Department of the claim. *See id.* ¶ 21. Kinsale denied the claim (hereinafter, the "Claim") via email on March 21, 2025, which they followed up with a letter dated April 17, 2025. *Id.* ¶ 22. This denial was based on the 2025-26 Policy. *Id.* As a basis for denial, Kinsale relied in part on the exclusion of claims related to Kyle Greathouse. *Id.*

PVP alerted Kinsale that it submitted the Claim under the 2024-25 Policy. *Id.* ¶ 23. On June 2, 2025, Kinsale again denied the Claim, this time under the 2024-25 Policy. *Id.* ¶ 24. PVP's attorneys sent Kinsale a letter requesting reconsideration of the denial of a defense based on New Mexico law. *Id.* ¶ 25. Kinsale filed this federal action on June 30, 2025. *Id.* ¶ 26. The next day, it sent PVP a third declination letter. *Id.* ¶ 27. On October 3, 2025, Mr. Greathouse filed suit against PVP for retaliatory discharge. *Id.* ¶¶ 12-13.

## II.   PROCEDURAL HISTORY

Kinsale filed its *Complaint for Declaratory Relief* against PVP and Kyle Greathouse. Compl. ¶¶ 5-6, Dkt. No. 1. Kinsale seeks in Count One a declaration that it has no duty under the 2024-25 Policy to defend or indemnify PVP in connection with the Claim, and that it has no duty to Mr. Greathouse for any loss or damages arising out of the Claim or otherwise relating to the termination of his employment. *Id.* ¶ 41. In Count Two, Kinsale seeks a declaration that it has no

duty to defend or indemnify PVP against the Claim under the 2025-26 Policy and that it has no duty to Mr. Greathouse for any loss or damages arising out of the Claim or otherwise relating to the termination of his employment. *Id.* ¶¶ 47-52. Subsequently, Kinsale filed a *Stipulation of Dismissal of Kyle Greathouse*, moving to dismiss him as a defendant without prejudice after Mr. Greathouse agreed to be bound by the Court's determination on the merits and judgment in this case. Stipulation 2, Dkt. No. 4.

PVP filed an Answer and Counterclaim (Dkt. No. 10). PVP denies that Kinsale is entitled to the declarations it seeks in Count One. *See* Answer ¶¶ 32-41, Dkt. No. 10. As to Count Two, however, PVP "admits Kinsale has no obligation under the 2025-2026 Policy to defend or indemnify PVP in connection with the Subject Claim." *Id.* ¶ 43. Given this concession, the issues left in the case relate to the 2024-25 Policy.

In its Counterclaim, PVP asserts the following claims: breach of contract (Count I); insurance bad faith (Count II); violations of the New Mexico Unfair Insurance Claims Practices Act ("NMUIPA"), N.M. Stat. Ann. § 59A-16-20 (Count III); and declaratory judgment (Count IV). Countercl. ¶¶ 29-64, Dkt. No. 10. PVP argues that Kinsale had actual and timely notice of a potential claim under the 2024-25 Policy during the 2024-25 Policy period, creating a duty on Kinsale to investigate the potential claim to determine if a defense was owed under that policy. *Id.* ¶¶ 30-31. According to PVP, Kinsale breached its obligations under the 2024-25 Policy by failing to investigate the claim and provide a defense and then denying the Claim on three occasions without a judicial determination. *Id.* ¶ 35. PVP further asserts that Kinsale acted in bad faith, breaching the duty of good faith and fair dealing, when it denied a defense without an investigation, placing its interests above PVP's, and denying a defense to PVP after it had actual notice of the claim. *Id.* ¶¶ 46-47. PVP contends that Kinsale's acts and failures to act constitute violations of the

6

NMUIPA. Finally, PVP "seeks a declaration that Kinsale has an obligation to defend PVP against the claims asserted against it by Kyle Greathouse, including those alleged in Kyle Greathouse's October 3, 2025 Complaint, and because Kinsale breached the duty to defend, Kinsale has waived any coverage defenses, obligating Kinsale to provide indemnification for any loss PVP is obligated to pay as a result of the Kyle Greathouse litigation." *Id.* ¶ 64.

Kinsale filed a motion to dismiss PVP's counterclaim under Federal Rule of Civil Procedure 12(b)(6). Mot. 1, Dkt. No. 15. According to Kinsale, all the counterclaims must be dismissed because it has no duty to defend or indemnify PVP where the Claim was not both first made against PVP and reported in writing to Kinsale's Claims Department during the 2024-25 Policy period. *See id.* at 3. PVP counters that Kinsale received actual notice of the Claim, triggering the duty to defend under New Mexico law. Resp. 3, Dkt. No. 22. PVP asserts that Kinsale breached its duty to defend, failed to investigate whether a defense was owed, and mishandled the claim. *Id.* at 4.

### III.    STANDARD

When reviewing a motion to dismiss a counterclaim, a court applies the same standard as reviewing a Rule 12(b)(6) motion to dismiss a claim. *See Ashley Creek Phosphate Co. v. Chevron USA, Inc.*, 315 F.3d 1245, 1267 (10th Cir. 2003); *Jones v. Addictive Behavioral Change Health Group, LLC*, 364 F.Supp.3d 1257, 1265 (D. Kan. 2019). For a party to survive a motion to dismiss, the claim "must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal quotations omitted). A counter-plaintiff must allege either direct or inferential allegations on all the material elements of the counterclaim and provide enough factual allegations for a court to infer the counterclaim is plausible. *See Bryson v. Gonzales*, 534 F.3d 1282, 1286 (10th Cir. 2008). Conclusory allegations

without supporting factual allegations are insufficient to state a counterclaim. *See Riddle v. Mondragon*, 83 F.3d 1197, 1202 (10th Cir. 1996) (quoting *Hall v. Bellmon*, 935 F.2d 1106, 1110 (10th Cir. 1991)).

If on a motion to dismiss matters outside the pleadings are presented to and considered by the court, the motion generally must be treated as one for summary judgment. Fed. R. Civ. P. 12(d). No conversion is required, however, when the court considers documents incorporated into the complaint by reference and central to the plaintiff's claim, unless their authenticity is questioned. *See Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 322 (2007); *Jacobsen v. Deseret Book Co.*, 287 F.3d 936, 941 (10th Cir. 2002); *Pace v. Swerdlow*, 519 F.3d 1067, 1072 (10th Cir. 2008). Kinsale attached the 2024-25 Policy to its complaint and PVP has not disputed its authenticity, so the Court may consider its contents without converting the motion to dismiss into a summary judgment motion.

## IV.    ANALYSIS

Under the Declaratory Judgment Act ("DJA"), a federal district court "may declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought." 28 U.S.C. § 2201(a). One of the functions of the DJA is to provide insurance companies a forum to seek to have their liability declared. *Horace Mann Ins. Co. v. Johnson By & Through Johnson*, 953 F.2d 575, 579 (10th Cir. 1991). In a DJA case before the federal court on diversity jurisdiction, the district court applies state law to determine the meaning of an insurance policy. *See Stickley v. State Farm Mut. Auto. Ins. Co.,* 505 F.3d 1070, 1076 (10th Cir. 2007). The parties agree New Mexico law applies.

A federal court first looks to whether the Supreme Court of New Mexico has decided the issue, but if not, then the court must predict how it would rule. *See Jordan v. Maxim Healthcare*

8

*Servs., Inc.*, 950 F.3d 724, 730-31 (10th Cir. 2020). To do so, a court may consider persuasive state authority, such as the Supreme Court of New Mexico's dicta and precedential decisions by the New Mexico Court of Appeals. *See id.* at 731. This Court is also bound by Tenth Circuit law interpreting a state's law. *See id.*

Kinsale urges the Court to look at the plain language of the 2024-25 Policy, which it says only requires coverage where the claim is first made against the insured during the policy period and reported in writing to the company within the policy period. Kinsale then points the Court to a Notice provision in the policy that says it is important to report claims in writing and directly to the Kinsale Claims Department. According to Kinsale, because its Claims Department did not receive notice of the claim until March 18, 2025, even though it was made to PVP in January 2025, no coverage is due under the Policy. On the other hand, PVP argues that the issue this Court must resolve precedes the coverage decision raised by Kinsale. PVP contends that, by failing to investigate whether a defense was owed when it had actual notice of a claim, Kinsale breached its duty to defend, waiving its ability to challenge the underlying merits as to coverage. The Court will therefore begin its analysis with the duty to defend.

An insurer's duty to defend is independent of its duty to pay under the terms of the same policy. *Foundation Reserve Ins. Co., Inc. v. Mullenix*, 1982-NMSC-038, ¶ 6, 97 N.M. 618. An insured may proceed with a bad faith claim, independent of the existence of coverage, where the insurer failed to deal fairly in handling the claim, failed to conduct a fair investigation, or failed to fairly evaluate coverage. *Haygood v. United Services Automobile Ass'n*, 2019-NMCA-074, ¶¶ 22-24, 453 P.3d 1235. The duty to defend arises out of the contractual obligation in the insurance policy. *Knowles v. United Services Auto. Ass'n*, ¶ 4, 1992-NMSC-030, 113 N.M. 703. One of the ways in which an insurance contract triggers an obligation to defend is "if the insurer is notified

of factual contentions or if the insurer could have discovered facts, through reasonable investigation, implicating a duty to defend." *Dove v. State Farm Fire and Cas. Co.*, 2017-NMCA-051, ¶ 11 (quoting *Sw. Steel Coil, Inc. v. Redwood Fire & Cas. Ins. Co.*, 2006-NMCA-151, ¶ 14, 140 N.M. 720). Actual notice triggers the duty to defend unless the insured affirmatively declines a defense. *Garcia v. Underwriters at Lloyd's, London*, 2008-NMSC-018, ¶ 1, 182 P.3d 113.

An insurer must investigate the facts and circumstances underlying the complaint against its insured, as is reasonable based on the facts provided by the insured or provided by the circumstances surrounding the claim to determine if it has a duty to defend. *Dove*, 2017-NMCA-051, ¶ 11. When an insurer receives actual notice, it may protect its interests by contacting the insured to determine whether the insured wants its insurer's assistance. *Garcia*, 2008-NMSC-018, ¶ 19. If the insured is unresponsive or uncooperative, the insurer is relieved of the duty to defend. *Id.*

The duty to defend lasts unless and until the insurer "receives a judicial ruling in its favor relieving it of any further obligations." *Dove*, 2017-NMCA-051, ¶ 12 (quoting *Loya v. Gutierrez*, 2015-NMSC-017, ¶ 42, 350 P.3d 1155). An insurer has a duty to defend if its insured was potentially covered. *Id.* ¶ 16. In New Mexico, "an insurer who refuses to defend a covered insured without seeking a judicial determination that the alleged insured is not covered under the policy, or without a voluntary waiver from the insured, does so at its peril." *Id.* ¶ 14 (internal citations omitted). An insurer may be liable for damages, breach of contract, and bad faith tort claims stemming from the breach of the duty to defend. *See id.* (citing *Quihuis v. State Farm Mut. Auto. Ins. Co.*, 235 Ariz. 536, 334 P.3d 719, 730 (2014)).

Where breach of the duty to defend is at issue, the court does not resolve the merits of whether the claim was actually covered. *Id.* ¶ 15. "That is because an insurer who unilaterally

10

refuses to defend effectively waives its ability to later challenge the underlying merits as to coverage because the ultimate question of coverage is to be properly resolved in the primary action in order to protect the interests of the insured and for judicial efficiency." *Id.* Nor does a court turn to contract defenses first. *See D.R. Horton, Inc. v. Trinity Universal Ins. Co.*, 2024-NMCA-054, ¶ 20, 553 P.3d 463 ("New Mexico law requires that the duty to defend question be resolved before contract defenses (like compliance with contractual notice requirements) can be applied…."). For example, "[w]here the duty to defend and the duty to give notice are both at issue, disputes of fact involving the duty to defend must be resolved as a threshold matter by the fact-finder, because notice-type defenses are unavailable to the insurer if the insurer breached the duty to defend." *Id.* ¶ 17.

Under New Mexico case law, then, PVP is correct that the duty to defend question must be resolved before determining coverage or other coverage defenses. For its part, Kinsale argues that the New Mexico case law on the sequence of resolving claims does not apply in this context – to a claims-made policy. The problem with Kinsale's argument, however, is that the New Mexico law cited does not suggest it is limited to only occurrence-based policies. Instead, the New Mexico courts have stated generally that the duty to defend is triggered by notice from any source of the claim. The policy considerations underlying the rule apply equally to a claims-made policy: (1) the insurer is in a better position than the insured to know the scope of the insurance contract and duties imposed by it; and (2) actual notice protects the benefits of the insurance contract because the insurer, having received consideration for inclusion of the insured on its policy, should not be allowed to evade its duties as a result of the insured's ignorance. *Garcia*, 2008-NMSC-018, ¶ 18.

Kinsale nevertheless cites case law explaining that in a claims-made policy, notice to the insurer of a claim or occurrence during the policy period is what invokes coverage, in contrast to

an occurrence policy where coverage attaches automatically whenever a covered occurrence takes place within the policy period. *See* Pl.'s Reply 5, Dkt. No. 25 (citing, among others, *Anchondo v. Anderson, Crenshaw & Assoc., LLC*, No. CV 08-202 RB/WPL, 2011 WL 4549279, at *3, 5 (D.N.M. Sept. 29, 2011) (Lynch, J.) (explaining that claims made policy differs significantly from occurrence policy); *City of Santa Rosa v. Twin City Fire Ins. Co.*, 2006-NMCA-118, ¶ 3, 140 N.M. 434 (describing claims-made policy as covering damages claims first made during policy period and often having lower premiums because insurer is exposed to more limited, ascertainable risk in contrast to occurrence policy that covers error or omission regardless of when claim is made)). Those cases, however, merely described generally what invokes the duty to provide coverage; they did not discuss the separate duty to defend. Certainly, notice is a central feature of a claims-made policy. Although a claims-made policy may reduce policy costs to the insured by allowing an insurer to close its book on a policy at the expiration date, that does not mean that an insurer may close its eyes to a known claim for which it has actual notice within the policy period. These cases simply do not shed light on any limitations in the actual notice standard set forth in *Garcia* and reiterated in *D.R. Horton*.

For example, Kinsale relies on a district court opinion, *AR3, LLC v. Kelley*, No. 13-cv-1121-SWS-CG, 2014 WL 11511715 (D.N.M. Oct. 9, 2014) (Skavdahl, J.), involving a claims-made-and-reported insurance policy. In *AR3*, a law firm sought coverage for a client's legal practice claim against it, but the insurer contended the plain language of the insurance contract barred coverage. *Id.* at *1-2. According to the insurer, the law firm failed to timely report the claim to the insurer for months after it learned of the claim, outside the policy period, while the subsequent policy barred coverage, because the firm knew of the claim prior to the policy period. *See id.* at *2. The client, as assignee of the firm's claim, argued the claims should be covered

12

because the firm received notice of the claim and reported it to its insurer all while it was continuously insured by that insurer. *Id.* at \*2. The district court agreed that the contracts barred coverage. *Id.* at \*4. *AR3*, however, is inapposite. There was no argument made therein that the insurer had actual notice of the claim within the initial policy period, as here. Nor was a duty to defend theory specifically raised in the case. It thus offers little insight.

Moreover, the New Mexico Court of Appeals rejected a similar argument in *D.R. Horton*. There, the insurer argued that the duty to defend was not triggered because notice under its policies was a condition precedent to the insurer performing its contractual duty to defend. *D.R. Horton*, 2024-NMCA-054, ¶¶ 21-22. The court of appeals reasoned that, because actual notice from any source triggers the duty to defend, the duty to defend is triggered even without the insured's compliance with the notice provision. *Id.* ¶ 22. That rule does not change even where an insurance clause attempts to convert the notice provision into a condition precedent to the duty to defend. *Id.* ¶ 22. Kinsale's claims-made-and-reported argument is not unlike the condition-precedent argument. Based on *D.R. Horton*, this Court finds that the New Mexico appellate courts have not – and likely will not – make a distinction in the law to carve out an exception to the actual notice standard for claims-made-and-reported policies.[1] Consequently, the Court denies Kinsale's motion to dismiss PVP's counterclaims for breach of contract (Count I) and bad faith (Count II). *Cf. Haygood*, 2019-NMCA-074, ¶¶ 22-23 (explaining that insured might establish bad faith by proving insurer failed to deal fairly in handling claim and failing to conduct a fair investigation; such a claim is not predicated on coverage).

---

[1] Moreover, at least one other state appellate court decision suggests that there is no reason to carve out an exception for claims-made-and-reported policies regarding the duty to defend. *See*, *e.g.*, *Uhlich Children's Advantage Network v. National Union Fire Co. of Pittsburgh, PA*, 929 N.E.2d 531, 540-42 (Ill. App. Ct. 2010) (rejecting argument that, where insured breaches notice provision in claims-first-made-and-reported policy, insured's breach negates insurer's duty to defend or indemnify). It rejected the argument that the estoppel rule should be limited to occurrence-based policies. *Id.* at 541. This Court likewise finds no reason to read a claims-made-and-reported exception into New Mexico's clearly stated actual-notice standard.

Turning to PVP's counterclaim for violation of the NMUIPA (Count III), Kinsale argues that it must be dismissed because there is no coverage under the 2024-25 Policy and PVP failed to tie its legal conclusions to facts to state a plausible claim. In response, PVP argues that its NMUIPA claim satisfies notice pleading based on its allegations that Kinsale failed to perform a reasonable investigation, initially denied the claim under the wrong policy, misrepresented terms of the policy as applied to the facts and applicable law, and compelled PVP into litigation regarding the claim. PVP asserts in Count III that Kinsale's acts and failures to act constitute the following unfair claims practices prohibited by the NMUIPA: misrepresenting to insureds facts or policy provisions related to coverages; failing to acknowledge and act reasonably promptly upon communications with respect to claims from insureds arising under policies; failing to adopt and implement reasonable standards for the prompt investigation and processing of claims; compelling insureds to litigate to recover amounts due under the policy; not attempting in good faith to effectuate prompt, fair and equitable settlements of an insured's claim in which liability has become reasonably clear; and failing to promptly provide an insured a reasonable explanation of the basis for denial of a claim. Countercl. ¶ 51, Dkt. No. 10.

Section 59A-16-20 prohibits, among other things, "failing to acknowledge and act reasonably promptly upon communications with respect to claims from insureds arising under policies," *id.* § 59A-16-20(B); and "failing to adopt and implement reasonable standards for the prompt investigation and processing of insureds' claims arising under policies," *id.* § 59A-16-20(C). Contrary to Kinsale's arguments and the cases upon which they relied, it is not clear that a claim cannot be plausibly made under these provisions even in the absence of coverage where the allegations stem from a failure to investigate a duty to defend. PVP alleges that Kinsale received actual notice of the potential claim against PVP during the renewal process and prior to the

14

expiration of the 2024-25 Policy. *See* Countercl. ¶¶ 16-20, Dkt. No. 10. The notice prompted Kinsale to exclude Kyle Greathouse's claims from coverage under the 2025-26 Policy, but it did not prompt Kinsale to investigate its duty to defend prior to expiration of the 2024-25 Policy. *See id.* ¶¶ 19-20. These facts could plausibly state a claim under the NMUIPA based on § 59A-16-20(B) and (C). The Court therefore will not dismiss PVP's counterclaim in Count III.[2]

Finally, Kinsale argues that PVP's declaratory judgment claim (Count IV) should be dismissed as a matter of law because it is not entitled to coverage or a defense as a matter of law. As detailed *supra*, the duty to defend is independent of the coverage defense and applies to claims-made-and-reported policies in New Mexico. PVP's counterclaim for declaratory relief does not fail as a matter of law. Kinsale additionally argues Count IV should be dismissed because it is duplicative of Kinsale's declaratory relief claim and PVP's breach of contract claim and unnecessary. Although PVP did not specifically address this latter argument, it did argue the underlying merits of why Kinsale has an obligation to defend it and urges the Court to deny the motion. Based on the record, the Court is not convinced that the relief requested in Count IV, which is the inverse of Kinsale's Declaratory Judgement Action claim, is unnecessarily duplicative of it. Moreover, in PVP's breach of contract claim, it seeks damages, whereas in Count IV, PVP requests a declaration that Kinsale has an obligation to defend it. PVP's DJA counterclaim seeks "to define the legal rights and obligations of the parties in anticipation of some future conduct, not simply to proclaim liability for a past act." *Marlin Oil Corp. v. Lurie*, 417 F. App'x 740, 745 (10th Cir. Mar. 28, 2011). The Court will therefore not dismiss PVP's declaratory judgment claim (Count IV) at this motion to dismiss stage.

---

[2] Because Count III in PVP's counterclaim will remain in the case, the Court declines to address whether each statutory subsection asserted by PVP in Count III could state a claim on its own. Kinsale raised certain arguments for striking particular subsections for the first time in its reply, so the briefing on striking theories of recovery is limited.

**IT IS THEREFORE ORDERED** that Kinsale's *Motion to Dismiss Pecos Valley Production, Inc,'s Counterclaim* (**Dkt. No. 15**) is **DENIED**.

_____

SENIOR UNITED STATES DISTRICT JUDGE