# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF NEW MEXICO

**KINSALE INSURANCE COMPANY, an**
**Arkansas corporation,**

    **Plaintiff/Counter Defendant,**

**v.**                                                                 **No. 2:25-cv-00618-JCH-KRS**

**PECOS VALLEY PRODUCTION, INC.,**
**a New Mexico corporation,**

    **Defendant/Counter Plaintiff.**

## <u>MEMORANDUM OPINION AND ORDER</u>

This matter comes before the Court on the *Motion for Partial Summary Judgment (Count I: Breach of Contract)* (Dkt. No. 30) filed by Defendant/Counter Plaintiff Pecos Valley Production Inc. ("PVP"). PVP requests that the Court enter summary judgment in its favor on Count I of PVP's Counterclaim for breach of the insurance contract. According to PVP, Plaintiff/Counter Defendant Kinsale Insurance Company ("Kinsale") had actual knowledge of a potential claim against its insured, PVP, before the insurance policy expired, yet it did nothing to investigate the potential claim to determine if it owed a defense to its insured, breaching its duty to defend as a matter of law. Kinsale opposes the motion, arguing that it owed no duty to defend or indemnify PVP because neither coverage nor the duty to defend were ever triggered under the applicable policy. The Court, having considered the motion, briefs, evidence, and applicable law, will deny PVP's motion for partial summary judgment because a question of fact exists for the jury to resolve whether Kinsale received actual notice of a claim within the relevant policy period.

    **I.**       **FACTUAL BACKGROUND**

The facts of this case are largely undisputed. Where there is a dispute, the Court has set forth the facts in the light most favorable to the nonmoving party, which as to this motion is Kinsale. *See Quaker State Minit-Lube, Inc. v. Fireman's Fund Ins. Co.*, 52 F.3d 1522, 1527 (10th Cir. 1995).

### A. The Insurance Policies

Kinsale issued a Management Liability Policy to PVP, effective February 9, 2024, through February 9, 2025 (the "2024-25 Policy"). PVP's Undisputed Fact ("UF") ¶ 1, Dkt. No. 30. The 2024-25 Policy contained Employment Practices Liability ("EPL") Coverage. PVP's UF ¶ 2, Dkt. No. 30. Kinsale issued a renewed Management Liability Policy to PVP, effective February 9, 2025, to February 9, 2026 (the "2025-26 Policy"). PVP's UF ¶ 3, Dkt. No. 30.

The 2024-25 Policy provides coverage on a claims-made-and-reported basis. Kinsale's UF ¶ A, Dkt. No. 32. This limitation, set forth in a box disclaimer in the General Terms and Conditions Form, says in bold and all caps:

> **THIS IS A CLAIMS MADE AND REPORTED POLICY. THE COVERAGE REQUIRES THAT A CLAIM BE FIRST MADE AGAINST AN INSURED DURING THE POLICY PERIOD AND BE REPORTED IN WRITING TO THE COMPANY WITHIN THE POLICY PERIOD OR AN EXTENDED REPORTING PERIOD, IF APPLICABLE**….

Kinsale's UF ¶ B, Dkt. No. 32. The Insuring Agreement of the EPL Coverage Form states: "We will pay 'loss' in excess of the Deductible that the 'insured' is obligated to pay for a 'claim' for a 'wrongful act'." Kinsale's UF ¶ C, Dkt. No. 32. It further says that this insurance only applies if: "The 'claim' is first made against the 'insured' during this 'policy period' and is reported to us in writing during this 'policy period', or within an Extended Reporting Period, if applicable." *Id.*

The 2024-25 Policy requires that claims be reported in writing and directly to Kinsale's Claims Department. Kinsale's UF ¶ D, Dkt. No. 32. It states that reporting to underwriting personnel or as part of renewal does not constitute notice of a claim:

### NOTICE – WHERE TO REPORT A CLAIM

It is important that losses, claims, or incidents (if incident reporting is permitted under the Policy) are reported in writing and directly to the Claims Department at Kinsale Insurance Company. Reporting losses, claims, or incidents to an insurance agent or broker is not notice to Kinsale Insurance Company Claims Department. Failure to report directly to Kinsale Insurance Company's Claims Department may jeopardize coverage under the Policy.

*Id.*; 2024-25 Policy, Dkt. No. 1-2 at 4 of 35. According to Section H.7 of the General Terms and Conditions section of the 2024-25 Policy, "Disclosure of a 'claim' or potential 'claim' on a renewal submission, application, or claim information supplement submitted to us shall not be notice of a 'claim.'" 2024-25 Policy, Dkt. No. 1-2 at 16 of 35.

### B.  The Claim

PVP employed Kyle Greathouse until his separation from PVP in November 2024. PVP's UF ¶ 5, Dkt. No. 30. PVP and Kyle Greathouse tried to negotiate a severance package related to the termination of employment through March 2025. PVP's UF ¶ 6, Dkt. No. 30. Mr. Greathouse first asserted the claims at issue against PVP in December 2024 through a written demand asserting wrongful termination and retaliation and demanding monetary relief. Kinsale's UF ¶ E, Dkt. No. 32. On January 10, 2024, his attorney sent a further demand for payment to PVP based on claims of retaliation, among other things, including a final demand for payment of $300,000, indicating that Mr. Greathouse intended to proceed with litigation if PVP refused. Kinsale's UF ¶ F, Dkt. No. 32.

PVP submitted an EPL Renewal Application to Kinsale. *See* Attachment to Feb. 4, 2025 email, Dkt. No. 24-3 at 4-9 of 9. Question 34 asked: "[I]n the last 12 months, does anyone have

any other Material Facts to disclose?" *Id.* at 7 of 9. PVP selected the box, "No." *Id.* Question 35

asked: "[I]n the last 12 months, has any wrongful termination discrimination, sexual harassment

claims or any other wrongful employment practices liability claim or suit, including third party

claims, ever been made against the Firm or any predecessor firm or any current or former member

of the Firm or predecessor firm?" *Id.* PVP failed to select either "Yes" or "No" in response to

Question 35 and did not include a Supplemental Claim Form detailing any existing claims. *Id.*

In response to a request from Kinsale's Underwriting Department for additional

information in connection with policy renewal, on February 4, 2025, PVP's broker sent an email

to Susan Hollifield of USG Services, Inc., which was then forwarded to Kinsale's Underwriting

Department. Kinsale's UF ¶ G, Dkt. No. 32. The email provided the following response regarding

the reported termination of a company officer:

> I am still waiting on the completed supp app but here is the additional information
> received so far:
> - Updated Renewal app with #25 marked "yes" per the insured
> - Name of terminated officer: Kyle Greathouse: "Misconduct[] related to
>   Harassment, Workplace Mistreatment, Inappropriate Conduct,
>   Unprofessional Conduct and Hostile Communication in violation[] of
>   company policy, other substantiated issues related to bully behavior,
>   targeting and retaliatory behavior contributing to a hostile working
>   environment.
> - Confirmed – Rudy Acosta was in fact the manager that made such
>   comments related to sexual harassment. No, his employment was
>   terminated as a result of the investigation.

*See* Kinsale's UF ¶ G, Dkt. No. 32; Feb. 4, 2025 email, Dkt. No. 24-3 at 2 of 9. *See also* June 2,

2025 letter, Dkt. No. 30-2 at 6 of 8.[1]

Kinsale issued a renewal of the 2024-25 Policy, effective February 9, 2025. PVP's UF ¶ 3,

Dkt. No. 30. The policies were substantially similar, but the 2025-26 Policy specifically excluded

---

[1] While the parties do not dispute the contents of the February 4, 2025 email, they dispute whether the information
contained therein amounts to actual notice of a potentially covered claim prior to the expiration of the 2024-25 Policy.

all claims related in any way to Kyle Greathouse based on the renewal information received from PVP. PVP's UF ¶¶ 4, 8, Dkt. No. 30.

On or about March 18, 2025, PVP submitted a formal notice of the claim to the Kinsale Claims Department for coverage under the 2024-25 Policy. PVP's UF ¶ 9, Dkt. No. 30. Kinsale first opened a claim (the "Claim") related to Kyle Greathouse's potentially covered claim around March 21, 2025. PVP's UF ¶ 10, Dkt. No. 30. On or about the same day, Kinsale verbally denied the Claim under the 2025-26 Policy due to the exclusion of claims related to Kyle Greathouse, and a subsequent email from Kinsale confirmed the denial. PVP's UF ¶ 11, Dkt. No. 30. Kinsale sent a disclaimer letter dated April 17, 2025, which denied a defense and indemnity for Kyle Greathouse's claim based on the 2025-26 Policy. PVP's UF ¶ 12, Dkt. No. 30. According to Kinsale, it denied the Claim because it arose during the previous policy period, and the 2025-26 Policy excluded claims related to Kyle Greathouse. *Id.* Kinsale closed the Claim on April 18, 2025. PVP's UF ¶ 13, Dkt. No. 30.

PVP requested reconsideration of Kinsale's coverage decision under the 2024-25 Policy. *See* PVP's Ex. 6, Dkt. No. 30-6. On June 2, 2025, Kinsale denied the Claim under the 2024-25 Policy because it was not timely reported. *See* PVP's Ex. 2, Dkt. No. 30-2; Kinsale Resp. 6, ¶ 15, Dkt. No. 32. In its explanation for why it disclaimed coverage, Kinsale explained, among other reasons, that the "only information" PVP provided about Kyle Greathouse's termination is reflected in the February 4, 2025 email. *See* PVP's Ex. 2, Dkt. No. 30-2 at 6 of 8. On June 17, 2025, PVP, through counsel, requested Kinsale reconsider the denial based upon the New Mexico duty to defend for liability carriers. PVP's UF ¶ 16, Dkt. No. 30.

Shortly thereafter, Kinsale filed its *Complaint for Declaratory Relief* against PVP and Kyle Greathouse. Compl. ¶¶ 5-6, Dkt. No. 1. Kinsale seeks in Count One a declaration that it has no

duty under the 2024-25 Policy to defend or indemnify PVP in connection with the Claim, and that it has no duty to Mr. Greathouse for any loss or damages arising out of the Claim or otherwise relating to the termination of his employment. *Id.* ¶ 41. In Count Two, Kinsale seeks a declaration that it has no duty to defend or indemnify PVP against the Claim under the 2025-26 Policy and that it has no duty to Mr. Greathouse for any loss or damages arising out of the Claim or otherwise relating to the termination of his employment. *Id.* ¶¶ 47-52. Subsequently, Kinsale filed a Stipulation of Dismissal of Kyle Greathouse, moving to dismiss him as a defendant without prejudice after Mr. Greathouse agreed to be bound by the Court's determination on the merits and judgment in this case. Stipulation 2, Dkt. No. 4.

PVP filed an Answer and Counterclaim (Dkt. No. 10). As relevant here, in Count I of the Counterclaim, PVP asserts a claim for breach of contract. PVP argues that Kinsale had actual and timely notice of a potential claim under the 2024-25 Policy during the 2024-25 Policy period, creating a duty on Kinsale to investigate the potential claim to determine if a defense was owed under that policy. *Id.* ¶¶ 30-31. According to PVP, Kinsale breached its obligations under the 2024-25 Policy by failing to investigate the claim and provide a defense and then denying the Claim on three occasions without a judicial determination. *Id.* ¶ 35. PVP moves for summary judgment on Count I of its Counterclaim.

## II.    SUMMARY JUDGMENT STANDARD

On a motion for summary judgment, the moving party initially bears the burden of showing that no genuine issue of material fact exists. *Shapolia v. Los Alamos Nat'l Lab.*, 992 F.2d 1033, 1036 (10th Cir. 1993). Once the moving party meets this burden, the nonmoving party must "come forward with specific facts showing" that genuine issues remain for trial. *Id.* The nonmoving party must go beyond the pleadings and by its own affidavits, or by the depositions, answers to

6

interrogatories, and admissions on file, designate specific facts showing that there is a genuine issue for trial. *Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986). A court must construe all facts and reasonable inferences in the light most favorable to the nonmoving party. *Quaker State*, 52 F.3d at 1527. Only disputes of fact that might affect the outcome of the case will properly preclude the entry of summary judgment. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986). There is no issue for trial unless there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party. *See id.* at 248.

### III.   ANALYSIS

PVP argues it is entitled to summary judgment on the breach-of-contract counterclaim because it is undisputed Kinsale failed to investigate if a defense was owed upon receiving actual notice of a potentially covered claim during the 2024-25 Policy period. According to PVP, Kinsale received actual notice of a potentially covered claim by at least February 4, 2025, yet it did not contact PVP to inquire if a defense was needed or desired. Kinsale responds that PVP's motion for summary judgment should be denied because PVP never provided notice of the claim pursuant to the 2024-25 Policy's claims-made-and-reported provisions.

In a separate, concurrently filed Memorandum Opinion and Order denying Kinsale's motion to dismiss PVP's counterclaims, this Court concluded that, in New Mexico, actual notice from any source triggers the duty to defend, and that rule applies to both occurrence-based and claims-made-and-reported policies. The Court incorporates that reasoning herein. It therefore rejects Kinsale's argument that PVP cannot succeed on its breach-of-contract claim based on the duty to investigate if a defense is owed where it did not provide notice in accordance with the policy terms.

Nevertheless, the Court disagrees with PVP that the summary judgment record establishes as a matter of law that Kinsale received actual notice of a potentially covered claim. Kinsale argues that the contents of the February 4, 2025, email were insufficient to apprise Kinsale that Mr. Greathouse might assert claims against PVP or that he had already done so. Rather, it urges the Court to read the email as suggesting that PVP expected claims might be asserted against it by persons other than Mr. Greathouse based on his alleged wrongful conduct. In further support of its position that it did not receive actual notice by February 9, 2025, Kinsale points to the following additional evidence: (1) PVP's 2025-26 renewal application in which PVP failed to select an answer to the question "has any wrongful termination discrimination … or any other wrongful employment practices liability claim or suit, including third party claims, ever been made" against PVP; and (2) PVP's formal notice on March 18, 2025, reporting a "new" claim. *See* Resp. 13, Dkt. No. 32. Construing all the evidence in favor of the non-moving party, the Court finds a question of fact exists for a jury to decide whether Kinsale received actual notice sufficient to trigger the duty to defend. The Court will therefore deny PVP's motion to find as a matter of law that Kinsale breached its duty to investigate if a defense was owed. *See D.R. Horton, Inc. v. Trinity Universal Ins. Co.*, 2024-NMCA-054, ¶ 17, 553 P.3d 463 ([I]f disputed issues of fact exist regarding the insurer's breach of the duty to defend, the question must be submitted to the jury.").

**IT IS THEREFORE ORDERED** that PVP's *Motion for Partial Summary Judgment (Count I: Breach of Contract)* (**Dkt. No. 30**) is **DENIED**.

_____
SENIOR UNITED STATES DISTRICT JUDGE